Joseph J. Peters and Marie H. Peters, husband and wife, Provident National Bank and Albert Nehme, Trustees for Michele Marie Peters, Provident National Bank and Albert Nehme, Trustees for Robert Joseph Peters, Provident National Bank and Albert Nehme, Trustees for Maryellen Peters, Provident National Bank and Albert Nehme, Trustees for Thomas Edward Peters, Appellants, *v.* Commonwealth of Pennsylvania, Department of Forests and Waters, Appellee.

Argued October 1, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Thomas M. Garrity,* with him *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellants, Joseph J. Peters and Marie H. Peters, husband and wife.

*Burton Spear,* with him *Spear & Johnsen,* for appellants, Provident National Bank and Albert Nehme, Trustees.

*Francis J. Tarquini,* for appellee.

Opinion by Judge Blatt, January 15, 1974:

The Department of Forests and Waters (now the Department of Environmental Resources and hereafter

the Department) filed a Declaration of Taking on December 30, 1970 condemning 49.400 acres of land which belonged to appellants, Dr. and Mrs. Peters and, by way of trusts, to their children. The land, known as Skippack Creek Farms, was within the Evansburg State Park Project area and, although the other lands in the area were acquired under the Project 70 Land Acquisition and Borrowing Act, Act of June 22, 1964, Special Sess., P. L. 131, 72 P.S. §3946.1 et seq., this property was acquired for park purposes pursuant to the authority of the then effective Section 1806(b) of the Administrative Code, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §466(b), which provides: "For the purpose of promoting healthful outdoor recreation and education, and making available for such use natural areas of unusual scenic beauty, especially such as provide impressive views, water falls, gorges, creeks, caves, or other unique and interesting features, to acquire, in the name of the Commonwealth, by purchase, gift, lease, or condemnation, any lands which, in the judgment of the department, should be held, controlled, protected, maintained and utilized as State park lands."

The condemnees (appellants) contend in their preliminary objections that the Department was not permitted to condemn this land under the provisions of Section 1806(b) and that the Declaration of Taking was defective for failure to comply with the procedural rules of the Eminent Domain Code. They argue that Section 1806(b) limits the power of condemnation to natural areas of unusual scenic beauty and to areas containing unique and interesting features. They claim, therefore, that, because the Skippack Creek Farms property is not one "of unusual scenic beauty," the Department does not have the power here to condemn. While it might well be argued today that any cluster of trees or open grassy plain might be an area of unusual scenic beauty, nonetheless, the decision as to what land will best pro-

mote the desirable public purpose of providing healthful outdoor recreation and education has been delegated by Section 1806(b) to the Department. And, in the absence of bad faith, caprice, or constitutional deprivation, the Department must be presumed to have exercised its discretion properly. Moreover, where as here the heavy burden to the contrary has not been satisfied, we must support the Department's choice. *Simco Stores, Inc. v. Phila. Redevelopment Authority,* 8 Pa. Commonwealth Ct. 374, 302 A. 2d 907 (1973); *Redevelopment Authority of the City of Erie v. Owners,* 1 Pa. Commonwealth Ct. 378, 274 A. 2d 244 (1971); *Lesher v. American Telegraph and Telephone Co. of Pa.,* 1 Pa. Commonwealth Ct. 522, 276 A. 2d 325 (1971). It is clear that the power of eminent domain granted here is for the taking of "any lands" which the Department considers proper for State park lands.

The procedures followed by the Department in this acquisition substantially complied with those required by the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-401 et seq. In fact, the appellants were provided additional safeguards by way of the two public meetings and the consultation with the Historical and Museum Commission which were held because the acquisition had initially been intended to be pursued under Project 70 regulations. Yet the appellants have alleged various procedural irregularities, arguing most strenuously the failure of the Department to comply with Section 402(b)(3) of the Eminent Domain Code, 26 P.S. §1-402(b)(3). This section provides that the declaration of taking shall contain: "A specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when such action was taken, and the place where the record thereof may be examined." While there may be cases where the omission of the "specific reference" re-

ferred to in this Section would invalidate the condemnation, in this case it is clear that the condemnees were in no way prejudiced because of the omission. And, as we stated in *Avery v. Commonwealth*, 2 Pa. Commonwealth Ct. 105, 109, 276 A. 2d 843, 845 (1971) : ". . . [T]he doctrine of strict construction has been used to guard against *unauthorized use* or *extension* of the power to condemn. We know of no constitutional or legal mandate which requires us to apply the standard of strict construction to *nonprejudicial* irregularities in the procedural aspects of condemnation." (Emphasis supplied.) The Department derived its power to condemn from Section 1806(b) and the action which effectuated this power was "the judgment of the department" as exemplified by the approval of the Secretary of the Department. The tangible evidence of the enabling legislation and of the action which authorized the taking is provided by the declaration itself which was properly dated and signed by the Secretary of the Department, Maurice K. Goddard.

It cannot be said that the condemnees were unable to question the propriety of the authorization or any other aspect of the taking due to lack of information. Therefore, we affirm the lower court in its dismissal of the preliminary objections.

———

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. My reading of the record fails to convince me that the land condemned here was, in the words of the statute, "of unusual scenic beauty, especially such as provide[s] impressive views, water falls, gorges, creeks, caves, or other unique and interesting features."[1] These statutory words are the criteria and prerequisite for condemning under Section

---

[1] Act of April 9, 1929, P. L. 177, as amended, §1806(b), 71 P.S. §466(b).

1806(b), and I cannot conclude, as does the majority, that the Department of Environmental Resources has, under Section 1806(b), the power of eminent domain for the taking of "any lands" which it considers proper for State park lands.

Judge CRUMLISH, JR. joins in this dissent.